UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ALETA BRIDGES**, | Case No. 1:09 CV 2872 |
| Plaintiff, | Judge Christopher A. Boyko |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | Magistrate Judge James R. Knepp II |

## Introduction

Plaintiff Aleta Bridges appeals the administrative denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) under 42 U.S.C. §§ 405(g) and 1383(c)(3), respectively. Following administrative hearing and review of the medical record, an administrative law judge (ALJ) determined on June 30, 2009 that Plaintiff was not disabled. (Tr. 9-17). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons that follow, the administrative denial of benefits should be affirmed.

## Background

Plaintiff applied for DIB and SSI on August 27, 2006, and claims an onset of disability date of May 1, 2005 due to cerebral palsy. (Tr. 15, 36, 93). She is a younger individual – age 19 at the alleged onset date – with part-time work experience in fast food and retail clothing sales. (Tr. 15, 36-38, 41-42, 116-17, 151).

*ALJ's Findings*

The ALJ found:

1. Plaintiff's insured status expired March 31, 2008;

2. Plaintiff's severe impairment was cerebral palsy;

3. The degree of impairment did not meet or equal § 11.07D of Appendix 1 for a mandatory award of benefits;

4. Plaintiff had no relevant past relevant work experience; and

5. Plaintiff could perform a partial range of sedentary work which allowed for performance of such jobs as bench assembler, wire worker, and final assembler.

(Tr. 9-17). Accordingly, the ALJ denied benefits. This decision became the final decision of the Commissioner following the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981; 416.1481. Plaintiff timely appealed and briefed her arguments for reversal (Docs. 12, 16),[1] and Defendant responded (Doc. 15).

*Plaintiff's Contentions*

Plaintiff challenges the ALJ's findings in two ways. She claims:

1. "The ALJ erred in failing to properly evaluate the opinion evidence of record"; and

2. "The ALJ erred in relying on Plaintiff's part-time school and work activities in finding [Plaintiff] not disabled."

(Doc. 12, at 3, 8). Within her first claim, Plaintiff also argues that if the ALJ properly evaluated opinion evidence, he would have found her condition met or equaled a listed impairment.

---

[1] Plaintiff's reply brief will not be construed to raise any new argument not explicitly raised in the Statement of Errors. *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

2

**Standard of Review**

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (quoting *Richardson*, 402 U.S. at 401). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Accordingly, the court must defer to the ALJ's determination "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (noting a court may "not inquire whether the record could support a decision the other way"). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.2007).

**Sequential Evaluation Process**

The Commissioner follows a five-step sequential evaluation regarding disability. This evaluation begins with the question of whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) & (ii); 416.920(a)(4)(i) & (ii). At the third step, the question is whether the

claimant has an impairment which meets or equals an impairment from the Listing of Impairments of Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & (d); 416.920(a)(4)(iii) & (d). If a claimant has an impairment meeting the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (explaining once a claimant has met this burden "he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.").

"At the fourth step of the sequential approach described in 20 C.F.R. § 404.1520, it is the claimant's burden to show that [she] is unable to perform her previous type of work." *Dykes* ex rel. *Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004). Once the administrative decision-maker determines an individual cannot perform past relevant work, the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability. *E.g., Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### ALJ's Reliance on School and Work Activities

Plaintiff argues the ALJ erred by relying on Plaintiff's status as a full-time college student and part-time work activities prior to and during the period of alleged disability. (*See* Tr. 12, 14, 16). She challenges both the ALJ's factual and legal conclusions.

*Substantial Evidence Supports the ALJ's Factual Conclusion Regarding Plaintiff's Full-Time Status*

The ALJ concluded Plaintiff was a full-time college student. (Tr. 12, 14). Plaintiff contends she has been working on a two-year medical assistant degree for the past five years, and it made no sense for the ALJ to find five years spent on a two-year degree equaled full-time status. (Tr. 40-41,

4

50). Plaintiff may have attended five years of college, but she testified at the January 20, 2009 administrative hearing that she started her current degree at Stark State College in September 2006. (Tr. 26, 38). Notes from a driver's permit evaluation in October 2006 reflect the Plaintiff was a "Full time student at Stark State." (Tr. 179). Further, at the time of the January 2009 hearing it was certainly probable that she remained on full-time status in completing her two-year degree program. Therefore, the ALJ had substantial evidence supporting the finding that Plaintiff was a full-time college student. *See Barker*, 40 F.3d at 794 (a court may "not inquire whether the record could support a decision the other way" but rather must evaluate whether the ALJ's decision is supported by substantial evidence in the record).

*Not Legally Erroneous for ALJ to Rely on Evidence of Work and College Attendance*

      Cohen *is Distinguishable*

Plaintiff next argues the ALJ erred in relying on evidence of part-time work and college attendance as contrary to *Cohen v. Secretary of Dep't of Health and Human Services*, 964 F.2d 524 (6th Cir. 1992). Defendant correctly counters that *Cohen* is distinguishable.

First, *Cohen* was a matter where "the ALJ failed to consider [claimant's] exertional limitations." *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001). *Cohen* mandated fair consideration of subjective complaints in addressing chronic fatigue, a disease difficult to assess based on objective evidence. 964 F.2d at 529. In contrast, the presence of cerebral palsy is both established, and can be quantified, by objective evidence. *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1, §§ 11.00C & 11.07D.

Second, *Cohen* built upon the reasoning that "'[a]ttending college on a part-time basis is not the equivalent to being able to engage in substantial gainful [work] activity.'" 964 F.2d at 530

(quoting *Parish v. Califano*, 642 F.2d 188, 191 (6th Cir. 1981)). The Sixth Circuit in *Cohen* held the ALJ erroneously used claimant's part-time attendance at University of Detroit Law School, her sporadic activities as a professional ballroom dancer, and her status as founder of a national support group for Epstein-Barr virus sufferers to discredit her disabling chronic-fatigue claim. *Id*. at 527-31. The court noted claimant had taken three years to complete one year of law school. *Id.* at 531.

In contrast to *Cohen*, substantial evidence supported the ALJ's finding here that Plaintiff attended college on a full-time basis, as discussed above. Full-time college attendance provided substantial evidence to contradict Plaintiff's claim of inability to engage in substantial gainful work activity. *See Delph v. Astrue*, 538 F.3d 940, 947 (8th Cir. 2008) (full-time college attendance from 1998 to 2001 used to uphold award termination effective 1998); *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008) (full-time college attendance refuted alleged need to change positions constantly from a seated position); *Baker v. Apfel*, 159 F.3d 1140, 1144-45 (8th Cir. 1998) (full-time college attendance negated alleged disabling pain).

Third, the ALJ's consideration was fair. Unlike in *Cohen*, there was no evidence here indicating Plaintiff was having difficulty attending college. Plaintiff testified that for the most part her attendance was not atypical except she wore braces "periodically" to walk long distances and used elevators. (Tr. 17, 42-43). She worked a part-time clerical job at the college. (Tr. 12, 14, 16, 37-39, 151). Finally, there was no evidence her studies were dependent on special accommodation, as in *Cohen*.

Therefore, the ALJ's factual findings were supported by substantial evidence and there was no legal bar to the ALJ's use of this finding to discredit Plaintiff and reject her claim of disability.

6

*Work History*

The ALJ next relied on Plaintiff's ongoing work history in finding her not disabled. (Tr. 14-16). Plaintiff does not deny she worked part-time both before the alleged onset of disability and during her alleged disability. She had a clerical work/study job at college, and worked at K-Mart, as a cashier and straightening clothing racks. (Tr. 14, 151).

The ALJ's resolution of work history was mostly favorable to Plaintiff. The ALJ found no performance of substantial gainful work activity, and deemed the job at K-Mart "trial work." (Tr. 15, 36-37). *See* 20 C.F.R. §§ 404.1592; 416.992 (defining "trial work" as "a period during which you may test your ability to work and still be considered disabled"); *Compare Dinkel v. Sec'y of HHS*, 910 F.2d 315, 319 (6th Cir. 1990) (claimant suffered cerebral palsy, partial blindness and deafness but was engaged in substantial gainful work activity.). Because under the sequential evaluation process substantial gainful work activity eliminates the disability claim at the first step, the ALJ's favorable rulings meant Plaintiff's disability claim was eligible for consideration beyond that step. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) & (b); 416.920(a)(4)(i) & (b).

Next, the ALJ favorably found Plaintiff had no "past relevant work". (Tr. 15). Therefore, the sequential evaluation skipped step four and proceeded to step five where "the burden . . . shift[ed] to the Commissioner to show that 'based on the claimant's residual functional capacity, as well as h[er] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.'" *Hensley v. Astrue,* 573 F.3d 263, 264 (6th Cir. 2009) (quoting *Wilson v. Comm'r of Soc. Sec*., 379 F.3d 541, 548 (6th Cir. 2004)).

Nothing in *Cohen* or the governing regulations precludes the ALJ from considering Plaintiff's continuation of her work activities as part of her "daily activities" at the fifth and final

7

step of the sequential evaluation process. *Compare Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[S]omewhat minimal daily functions are not comparable to typical work activities."), *with Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (employment requiring shelf-stacking showed ability to engage in basic work activities).[2]

The ALJ used his findings about Plaintiff's activities to discredit the argument that she could not engage in basic work activities. "The claimant's credibility may be properly discounted 'to a certain degree . . . where an [ALJ] finds contradictions among the medical reports, claimant's testimony, and other evidence.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). These findings include consideration of daily activities. *See* Social Security Ruling (SSR) 96-7p, 1996 WL 374186; 20 C.F.R. §§ 404.1529(c)(3)(i) & 416.929(c)(3)(i) ("daily activities" one factor to be considered); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 242 (6th Cir. 2002) (considering inconsistent statements about daily activities in assessing credibility); *Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) (noting ALJ "found that some of [claimant's] activities were inconsistent with his claims of disabling pain").

Plaintiff's contentions concerning the ALJ's evaluation of her college attendance and work activity are incorrect. The ALJ was free to consider Plaintiff's part-time work and full-time college attendance as adverse factors in assessing Plaintiff claim and the decision is supported by substantial evidence in this regard.

---

[2] "Typical or basic work activities refer to 'the abilities and aptitudes necessary to do most jobs,' including among other things 'walking, standing, sitting, lifting, pushing, pulling, reaching carrying, or handling.' 20 C.F.R. §[§ 404.1521(b);] 416.921(b)." *Rogers*, 486 F.3d at 249 n.6.

**Evaluation of Medical Evidence**

Plaintiff also argues the ALJ erred in evaluating medical opinion evidence.  Plaintiff contends if Dr. Hirst's opinion had been given full weight, she would have been found disabled under the third or fifth step of the sequential evaluation. *See* 20 C.F.R. Pt. 404, Subpt.  P, app.  1, § 11.07D. Plaintiff's counsel arranged for a one-time examination of Plaintiff by Dr. Hirst in February 2009 – subsequent to the administrative hearing – to provide support for her disability claim. (Tr. 217-22). Dr. Hirst does support Plaintiff's claims: he found her disabled at step three of the sequential evaluation process, and her remaining residual functional capacity (RFC) so diminished as to be tantamount to total disability. Plaintiff contends Dr. Hirst's medical report and opinion must be given greater weight than the opinions from the treating physician, Dr. Blumer (Tr. 191-96, 209-14), the state agency consultative physician, Dr. Scheatzle, (Tr. 162-67), and the non-examining state agency physicians, Drs. Derrow and McCloud (Tr. 168-75, 184). Plaintiff acknowledges Dr. Hirst was not a treating physician. Because Dr. Hirst is not a treating physician, the "treating physician" rule does not apply to his opinion and his opinion is not presumptively entitled to "greater deference." *Rogers*, 486 F.3d at 242 ("[G]reater deference is generally given to the opinions of treating physicians than to those of non-treating physicians[.]").

**Listed Impairment**

*Plaintiff's Cerebral Palsy Did Not Meet or Equal Listed Impairment*

Plaintiff argues Dr. Hirst's opinion established she was disabled at step three of the sequential evaluation.  At step three, the issue is whether the claimant has an impairment which meets or equals the definitions of impairment from the Listing of Impairments of Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(iii) & (d); 416.920(a)(iii) & (d).  If so, she is disabled. *See Sullivan v.*

*Zebley*, 493 U.S. 521, 532 (1990). Plaintiff argues Dr. Hirst's findings (*see* Tr. 217, 220) establish the requirement for award of disability in the presence of "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dextrous movements, or gait and station." 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 11.07D (incorporating § 11.04B).

Plaintiff argues Dr. Scheatzle's similar description of Bridges' gait as spastic, diplegic with rapid swing phase, decreased heel strike and toe off, and with slight external rotation of the legs confirms Dr. Hirst's opinion. (Tr. 167). On the other hand, Plaintiff's treating physician, Dr. Blumer, noted only balance problems, and opined in October 2008 and again in February 2009, that Plaintiff did not have significant and persistent disorganization of motor function in *two* extremities (Tr. 192, 210). Later in his opinion, the ALJ noted: "Dr. Blumer's [RFC] opinions are given less weight as not being consistent with the substantial evidence of record." (Tr. 15). The ALJ did not, however, discuss Dr. Blumer's opinions in the analysis of whether Plaintiff's condition met a listed impairment. (Tr. 12, 15).

The ALJ explained Dr. Hirst's opinion was inconsistent with the objective medical evidence and Plaintiff's own statements. (Tr. 12). Specifically, the ALJ noted that Plaintiff "asserted primarily problems with her left leg", "uses assistive devises only periodically", and "does not use assistive walking device[s] on a regular basis." (*Id.*). The ALJ's analysis is partially correct. Plaintiff did not testify regarding problems with only her left leg. Rather, it was the ALJ who stated at the hearing: "And then, of course, the left leg is worse[.]" (Tr. 49). However, Plaintiff did state earlier on her disability report, "[c]ere[b]ral palsy in left leg" (Tr. 116), and Dr. Blumer on June 9, 2006 reported cerebral palsy was affecting the left lower extremity with no mention of the right (Tr.

176). "For a claimant to show that his impairment matches a listing, [the claimant] must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (emphasis in original); *see also King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) ("lack of evidence indicating the existence of all requirements . . . provides substantial evidence to support the [Commissioner's] finding that claimant did not meet the Listing"). Accordingly, Plaintiff's report, Plaintiff's regular activities, and Dr. Blumer's report of left leg impairment provided the ALJ with substantial evidence to find the listed impairment – which required "[s]ignificant and persistent disorganization of motor function in *two* extremities" – not met. 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 11.07D (incorporating § 11.04B) (emphasis added).

Plaintiff maintains the ALJ failed to properly weigh Dr. Hirst's opinion as required by the regulations, and if he had done so, he would have found Plaintiff disabled. *See* 20 C.F.R. §§ 404.1527(d); 416.927(d). Plaintiff argues Dr. Hirst's and Dr. Scheatzle's findings lend consistency and supportability to the conclusion that the medical evidence established that the listed impairment had been met, and that Dr. Hirst has specialization.[3] Although the ALJ's analysis at step three is somewhat unclear, the situation presented falls into a recognized exception for harmless error: where the treating physician's opinion has been implicitly adopted. *Wilson*, 378 F.3d at 546 (providing three examples of harmless error in § 404.1527(d) analysis: 1) when the treating physician's opinion is patently deficient that it could not possibly be credited; 2) where the treating physician's conclusions are implicitly adopted by the ALJ; and 3) when the procedural goal has been met

---

[3] Dr. Scheatzle did not offer an opinion as to whether a listed impairment had been met or equaled. (*See* Tr. 167).

11

although the ALJ had not complied with the terms of 20 C.F.R. § 404.1527(d)(2)). The ALJ's conclusion at step three aligned with Dr. Blumer's opinion that there was disorganization in only *one* extremity. (*See* Tr. 176, 192, 210). Accordingly, the evidence was substantial because the treating physician's opinion on this issue was implicitly given controlling weight.

*ALJ Not Required to Consult a Medical Expert*

Buried in a footnote, Plaintiff contends the ALJ erred in failing to consult a medical expert as to whether a listed impairment was met or equaled, and this was error. (Doc. 12, at 4 n.5). Social Security Ruling 96-6p states: "The signature of a State agency medical or psychological consultant on an SSA 831 U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." 1996 WL 374180, at *3. The opinions from two medical consultants were in the record, in the form of Dr. Derrow's and Dr. McCloud's signatures on Disability Determination and Transmittal Forms without RFC assessments. (Tr. 59-62); *see* SSR 96-6p, 1996 WL 374180. These forms implicitly provide the necessary requisite opinion negating medical equivalence. *See Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). As the Social Security Ruling provides, a medical expert is only required under two circumstances, neither of which are argued by Plaintiff, and both of which are discretionary:

1. "When no additional medical evidence is received, but in the opinion of the [ALJ] . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable;" or
2. "When additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."

SSR 96-6p, 1996 WL 374180, at *4. Dr. Hirst's post-hearing medical report and opinion were

additional evidence. But to trigger calling a medical expert, the ALJ must find this new evidence "may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, *4. The ALJ did not so find, and as explained above, her reasoning was harmless error because the conclusion aligned with Dr. Blumer's opinion at step three that the severity of cerebral palsy did not meet the listed condition.

**RFC Determination**

*ALJ's RFC Finding Supported by Substantial Evidence*

Plaintiff objects to Dr. Scheatzle's RFC finding as inconsistent with Dr. Hirst's opinion, and objects to the ALJ's reliance on the opinions from the non-examining state agency physicians. Plaintiff argues the ALJ failed to weigh the medical opinions as required by the regulations.

The ALJ found Plaintiff had the RFC to perform light exertion while seated with a sit or stand option so she can be on her feet 15 minutes at a time and then return to sit for five minutes before standing again. (Tr. 12). This finding presumed that Plaintiff could sit for six hours and stand two hours of the workday, consistent with sedentary work. 20 C.F.R. §§ 404.1567(a) & 416.967(a); *see also* Tr. 12. The ALJ based her finding on Dr. Scheatzle's consultative opinion and the state agency physicians who reviewed it. (Tr. 14, 167, 168-75, 184). Dr. Scheatzle opined Plaintiff could perform light exertion, had unlimited ability to sit, could frequently stand with changes in position every fifteen minutes, and could walk one city block at a time. (Tr. 167).

There is a general order of preference to first give greater weight to the opinion from the treating physician followed next in line by an opinion from a non-treating examining physician. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); *Rogers,* 486 F.3d at 245; 20 C.F.R.

13

§§ 404.1527(d)(1-2) & 416.927(d)(1-2) (defining "Examining relationship" and "Treatment relationship"). On the opposite end, the opinion from a non-examining physician should be given little weight "if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); 20 C.F.R. §§ 404.1527(d)(3) & 416.927(d)(3).

The ALJ must give "good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007) ("Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."). "With regard to nontreating, but examining, sources, the agency will simply '[g]enerally [] give more weight to the opinion of a source who examined [the claimant] than to the opinion of a source who has not examined'" her. *Ealy*, 594 F.3d at 514. The procedural "good reasons" requirement does not apply to non-treating physicians. *Smith*, 482 F.3d at 876 (explaining that "[i]mportantly . . . this reasons-giving requirement exists only for § 404.1527(d)(2), and not for the remainder of § 404.1527" and concluding: "[i]n the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting their reports"). When an ALJ does not give the opinion from a treating physician controlling weight, in order to determine how much weight to give each other physician's opinion, "the ALJ should consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her speciality." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

Plaintiff does not contest the ALJ's reasons for giving treating physician Dr. Blumer's

14

opinions "less weight." (Tr. 15). Rather, Plaintiff challenges the reliance on Dr. Scheatzle's opinion over Dr. Hirst's. As noted above, Plaintiff argues Dr. Hirst's opinion is not inconsistent with the evidence of record, is well supported, and Dr. Hirst has specialization. Plaintiff further argues that because the only treating source opinion from Dr. Blumer was deemed internally inconsistent and unreliable by the ALJ, it was "inappropriate" to reject the remaining opinion evidence from Dr. Hirst while simultaneously accepting that of Dr. Scheatzle. (Doc. 12, at 7). Plaintiff seemingly seeks to apply the treating physician reasons-giving requirement to Dr. Hirst - an examining physician. Such reasons are not required. *Smith*, 482 F.3d at 876.

The ALJ's RFC determination is supported by substantial evidence. The ALJ explained that she gave less weight to Dr. Hirst's opinion because the doctor:

> found significantly worse signs on examination, such as atrophy in the lower leg muscles; grossly deformed feet; very unsteady gait; unstable platform; and toe paralysis; . . . these findings are not consistent with the other objective findings of record . . . they would only reflect the claimant's functioning in February 2009, and are not probative of the claimant's functioning as of the amended onset date, . . . the claimant's activities of daily living and work/school activities show that she is capable of working on a regular and continuing basis despite any limitation.

(Tr. 15).

First, Dr. Hirst's findings were "significantly worse" than those of Drs. Blumer and Scheatzle. (Tr. 15, 217). Consistency is simply comparison "with the record as a whole." 20 C.F.R. §§ 404.1527(d)(4); 416.927(d)(4). Dr. Hirst's findings were inconsistent with those of Dr. Blumer and Dr. Scheatzle for the relevant May 1, 2005 through March 31, 2008 insured status period for DIB. (Tr. 11, 15). The ALJ did not, as Plaintiff suggests, simply select Dr. Sheatzle's opinion over Dr. Hirst's, rather, the ALJ gave more weight to Dr. Sheatzle's opinion as it was more supported by other evidence in the record.

Second, although the ALJ is correct that Dr. Hirst examined Plaintiff on February 21, 2009, (Tr. 15, 217), the ALJ erred for two reasons in finding that his report was "not probative of the claimant's functioning as of the *amended onset date*." (Tr. 15 (emphasis added)). First, the onset date is not the point of measurement. Plaintiff must establish that she became "'disabled' prior to the expiration of h[er] insured status period." *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 861 (6th Cir. 1988). Plaintiff's insured status ended March 31, 2008. (Tr. 11). However, Dr. Hirst examined Plaintiff after her insured status ended and reported on health problems not related in the medical reports during her insured status. Health problems arising after the insured status period are irrelevant for DIB and the ALJ's rejection of them is supported by substantial evidence. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 401 (6th Cir. 2008) (adopting *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 528 (6th Cir. 2006)).

The ALJ's reliance on the post-insured status of Dr. Hirst's report ignores that Plaintiff also applied for SSI. "SSI benefits [are payable] to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen v. Galbreath*, 484 U.S. 74, 75 (1988). Dr. Hirst's February 2009 report and opinion were relevant to whether Plaintiff was disabled *after* March 31, 2008 for SSI benefits. The first two reasons given by the ALJ for partially discounting Dr. Hirst's opinion were invalid with respect to Plaintiff's SSI application.

Nonetheless, the ALJ's third reason – based on Plaintiff's daily activities – was valid for both SSI and DIB. Dr. Hirst's RFC was tantamount to an opinion of total disability because of the limitation to sitting only four hours (Tr. 221) – less than the six hour duration required for sedentary work performance. *See* SSR 83-10, 1983 WL 31251, at *5 ("[S]itting should generally total

approximately 6 hours of an 8-hour workday."). However, the ALJ found Plaintiff's full-time college attendance and part-time work activities negated her claim of disability. The ALJ's decision to reject Dr. Hirst's opinion, rely on Dr. Scheatzle's opinion, and adopt an RFC based on Dr. Scheatzle's report was supported by Plaintiff's activities. It is ultimately the ALJ's duty to determine a claimant's RFC based on the entire record. 20 C.F.R. §§ 404.1546; 416.946. It is also the ALJ's duty – not the Court's – to resolve conflicts in the record. *See, e.g.*, *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ here thoroughly discussed the medical and non-medical evidence in reaching his RFC determination. That determination – including the decision to partially discount Dr. Hirst's opinion both at step three and step five – was supported by substantial evidence.

## Conclusion and Recommendation

The issues before this Court must be resolved under the standard of whether the determination is supported by substantial evidence of record. "Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986). Based on the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision to deny DIB and SSI supported by substantial evidence and recommends it be affirmed.

s/James R. Knepp II<br>
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice. Failure to file objections within the specified time WAIVES

17

the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).